KEITH H.S. PECK            6825-0
132 Abacus
Irvine, CA 96218
Telephone:  (808) 384-7325
Facsimile:  (877) 570-1233
E-Mail:      supervising@advocacy-project.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| A.C., individually and as Legal Guardian of P.M., | Civil No._____ <br> (Other Civil Action) |
| Plaintiff, | **COMPLAINT; EXHIBITS "A"-"C"** |
| vs. | |
| DEPARTMENT OF EDUCATION, STATE OF HAWAII, and KEITH T. HAYASHI, superintendent of the Hawaii Public Schools, | |
| Defendants. | |

## COMPLAINT

Plaintiff A.C., individually and as legal guardian of P.M., by and through his attorney, hereby alleges and avers as follows:

**SUMMARY OF ARGUMENT**

This case involves clear-cut procedural violations that denied Student a FAPE. The DOE excluded essential participants (MAC staff) from the August 22, 2024 IEP meeting, failed to discuss proven transition supports, and provided only superficial discussion of behavioral interventions. Each violation significantly impeded parental participation in violation of 20 U.S.C. § 1415(f)(3)(E)(ii)(II) and *Doug C. v. Hawaii Dept. of Education*.

The Administrative Hearings Officer's decision contains multiple reversible legal errors: (1) applying contradictory standards to functionally identical issues (requiring discussion of one external document while excusing another); (2) rewriting the IDEA statute by requiring proof of educational harm for parental participation violations; and (3) improperly shifting the burden from DOE to Parent for ensuring proper IEP team composition. These errors warrant de novo reversal.

**INTRODUCTION**

1. This is an action for judicial review and reversal of an administrative decision under the Individuals with Disabilities Education Act (IDEA), 20

U.S.C. § 1400 et seq., specifically pursuant to 20 U.S.C. § 1415(i)(2)(A), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

2. Plaintiff seeks reversal of the decision issued on May 2, 2025, by the Hawaii Office of Dispute Resolution in DOE-SY2425-009, finding that Defendants did not deny Student a Free Appropriate Public Education (FAPE).

3. The administrative decision contains multiple reversible errors of law and must be reversed.

**JURISDICTION AND VENUE**

4. Jurisdiction is proper under 20 U.S.C. § 1415(i)(3)(A), 29 U.S.C. § 794a(a)(2), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1367 (supplemental jurisdiction).

5. Venue is proper in the District of Hawaii pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

6. Plaintiff P.M. is a 19-year-old student with disabilities entitled to protections under the IDEA and Section 504 of the Rehabilitation Act. He brings this action through his father and legal guardian, A.C

7. Defendant Department of Education, State of Hawaii (DOE), is a state educational agency responsible for ensuring compliance with the IDEA and receives federal financial assistance subjecting it to Section 504.

8. Defendant Keith T. Hayashi is the Superintendent of Hawaii Public Schools and is sued in his official capacity only.

**QUESTIONS PRESENTED**

**ISSUE ONE:** Whether the failure of the DOE to attempt to involve and/or to involve Student's private service providers in the 8/22/2024 IEP development process resulted in a denial of FAPE by causing lost educational opportunity, as established in *Doug C. v. Hawaii Dept. of Education*.

**ISSUE TWO:** Whether failing to discuss during the 8/22/2024 IEP meeting whether Student should continue to receive or continued to need the Transition Plan supports Student was receiving before they ended abruptly, particularly when determining what Student needed to return to a public placement after a period where Student was not provided Student's IEP program, denied Student a FAPE.

**ISSUE THREE:** Whether failing to discuss behavior interventions and/or review Student's Behavior Intervention Plan and instead stating during the 8/22/2024 IEP meeting that this would be handled outside of the IEP process and by reference to a behavior "Plan" denied Student a FAPE.

**STANDARD OF REVIEW**

9. **Legal Conclusions**: This Court reviews the Administrative Hearings Officer's legal conclusions de novo, including the application of legal standards relating to procedural requirements, parental participation rights,

and FAPE determinations. *Timothy O. v. Paso Robles Unified Sch. Dist.*,
822 F.3d 1105, 1118 (9th Cir. 2016).

10. **Factual Findings**: Factual findings are reviewed for clear error, but this
standard does not apply where factual findings directly contradict
unambiguous evidence in the record, such as video recordings. *L.J. by and
through Hudson v. Pittsburg Unified Sch. Dist.*, 850 F.3d 996, 1004 (9th Cir.
2017).

11. **Video Evidence**: No deference is owed to the ALJ's interpretation of
objective video evidence. The Court may independently review video
recordings that are part of the administrative record. 20 U.S.C. §
1415(i)(2)(C)(i).

12. **Administrative Deference**: Administrative interpretations of statutes
receive no deference when they contradict clear statutory language or
binding judicial precedent. Under *Chevron U.S.A. Inc. v. Natural Resources
Defense Council*, 467 U.S. 837, 842-43 (1984), deference is only appropriate
where Congress has left ambiguity for agencies to resolve. Here, Congress
used explicit, unambiguous language in 20 U.S.C. § 1415(f)(3)(E)(ii)(II)
establishing that parental participation violations constitute FAPE denials
without any additional requirements. Similarly, under *Auer v. Robbins*, 519
U.S. 452, 461 (1997), deference to agency interpretations of regulations is

inappropriate where the interpretation contradicts the regulation's plain

meaning. The Hearings Officer's legal conclusions adding requirements not

found in the statute or regulations, and directly contradicting binding Ninth

Circuit precedent in *Doug C.*, are entitled to no deference whatsoever. As the

Supreme Court stated in *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446-47

(1987), "the judiciary is the final authority on issues of statutory

construction" and courts must reject agency interpretations that are

"inconsistent with the statutory mandate or that frustrate the policy that

Congress sought to implement."

## LEGAL FRAMEWORK

### Administrative Law Principles

13. As demonstrated in Exhibit A, the Hearings Officer applied irreconcilably

contradictory legal standards to functionally identical issues. The ALJ

simultaneously held that: (1) supports in one external document (transition

supports) need not be discussed in the IEP meeting, while (2) supports in

another external document (BIP) must be discussed during the IEP meeting.

This contradiction defies logical reconciliation and constitutes per se

reversible error, as no coherent legal principle can explain these

diametrically opposite conclusions.

### Statutory Construction Principles

14. When Congress used explicit language that procedural violations which "significantly impeded the parent's opportunity to participate" constitute FAPE denials (20 U.S.C. § 1415(f)(3)(E)(ii)(II)), it deliberately chose not to include any requirement for proof of educational harm. Under *Russello v. United States*, 464 U.S. 16, 23 (1983), "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Congress knew how to require showings of educational harm---it did so elsewhere in the IDEA--- but deliberately omitted such requirements for parental participation violations. Yet as documented in Exhibit A, the ALJ explicitly rewrote the statute by requiring proof of educational harm, directly contradicting the plain language and *Doug C.*

**Parental Participation Rights Under Doug C.**

15. The Ninth Circuit in *Doug C.* explicitly held that parental participation violations are among "the most important procedural safeguards" under the IDEA and established that such violations are categorically not subject to harmless error analysis. 720 F.3d at 1043-46. The court emphasized that "procedural violations that interfere with parental participation in the IEP formulation process undermine the foundational principle of the IDEA" and

that such violations constitute per se denials of FAPE. *Id.* at 1045. This
categorical rule prevents exactly the type of post-hoc harmless error analysis
improperly applied by requiring proof of educational harm. Under *Doug C.*,
once parental participation has been significantly impeded, the procedural
violation alone establishes the FAPE denial---no additional showing of
substantive harm is required or permitted. As detailed in Exhibit A, the ALJ
directly violated this binding precedent by requiring educational harm for
parental participation violations.

16. The ALJ's erroneous conflation of procedural protections with substantive
requirements threatens to eviscerate the IDEA's protective framework. If
courts require proof of educational harm for every procedural violation—
effectively converting all procedural safeguards into substantive standards—
students with disabilities lose the very protections Congress specifically
designed to ensure meaningful parental participation in the educational
planning process. The IDEA's procedural safeguards exist precisely because
Congress recognized that meaningful parental participation is essential to
developing appropriate educational programs, and that without robust
procedural protections, substantive rights become illusory. When
administrative officers rewrite clear statutory language by adding
requirements Congress deliberately omitted, they undermine the

fundamental structure of the IDEA and leave disabled students with virtually no meaningful procedural protections.

## FACTUAL BACKGROUND

### Key Facts

17. **Student's Disability and Needs**: Student is a 19-year-old individual with autism spectrum disorder requiring specialized transition supports and behavioral interventions to access his education. (Decision, FOF 1-2).

18. **Successful Transition with MAC Supports**: From May 16 to July 9, 2024, Student successfully transitioned to public school with specialized supports provided by MAC, including staff accompaniment and transportation pairing. (Decision, FOF 21-24; Exhibit B).

19. **Abrupt Termination and Regression**: When DOE failed to extend MAC's contract on July 9, 2024, Student immediately regressed and stopped attending public school. (Decision, FOF 25-27; Exhibit B).

20. **IEP Meeting Failures**: At the August 22, 2024 IEP meeting, DOE failed to invite MAC staff, failed to discuss the proven transition supports, and provided only superficial discussion of behavioral interventions. (Decision, FOF 40-48; Exhibit A).

### Detailed Factual Timeline

21. These transition supports included MAC staff transporting Student to school, MAC staff accompanying Student to facilitate pairing with DOE staff, and other specialized services designed to address Student's unique autism-related needs---supports the DOE itself had previously approved and funded. (Decision, FOF 22).

22. On July 9, 2024, MAC suspended services when DOE failed to extend their contract, causing abrupt termination of Student's transition supports and immediate documented regression. Student regressed immediately when supports were terminated, demonstrating their essential nature for FAPE. (Decision, FOF 25; Exhibit B).

23. Student immediately stopped attending the public school and returned to MAC, demonstrating the direct educational harm caused by the loss of these essential supports. (Decision, FOF 26-27; Exhibit B).

24. On August 22, 2024, an IEP meeting was held to address Student's return to public school. Despite MAC's recent critical involvement with Student's education and their unique knowledge of Student's transition needs, no MAC representatives were invited to this meeting. (Decision, FOF 40-43).

25. During the August 22, 2024 meeting, the IEP team failed to discuss the specific transition supports (MAC staff accompaniment, transportation pairing, behavioral facilitation) that had been previously determined

essential for Student's educational access, instead stating these would be addressed separately. No such separate discussion ever occurred. (Decision, FOF 47; Video Recording DOE Ex. 80 at timestamps 00:17:22-00:27:48).

26. Similarly, the team provided only superficial discussion of behavioral interventions, explicitly stating these would be "handled outside the IEP process" through reference to a behavior plan that was over 16 months old (created April 20, 2023, as shown in Exhibit B). (Decision, FOF 48; DOE Ex. 80 at timestamp 1:01:20-1:02:53).[1]

27. Parent rejected the IEP and filed this due process complaint. (Decision, FOF 51, 57).

28. On May 2, 2025, the Hearings Officer erroneously found no FAPE denial despite acknowledging multiple procedural violations. As demonstrated in Exhibit A, the ALJ applied irreconcilably contradictory standards to functionally identical issues, violating basic principles of administrative law. The ALJ simultaneously held that supports in one external document (transition supports) need not be discussed in the IEP meeting, while supports in another external document (BIP) must be discussed---a contradiction that defies logical reconciliation. (Decision, p. 35; Exhibit A).

---

[1] Video evidence cited in this Complaint is part of the administrative record (DOE Ex. 80) and is subject to judicial review under 20 U.S.C. § 1415(i)(2)(C)(i).

## DISPUTED FACTS

29. The Administrative Hearings Officer's decision contains multiple factual errors and mischaracterizations that warrant correction under de novo review. The following disputes regarding the Hearings Officer's factual findings are material to the legal conclusions:

A. Contradictory Legal Standards Applied to Functionally Identical Issues

30. **Administrative Finding**: The ALJ found that transition supports in external documents need not be discussed during IEP meetings, while behavioral interventions in external documents must be discussed. (Decision, p. 35; Exhibit A).

31. **Disputed Fact**: The ALJ applied irreconcilably contradictory legal standards to functionally identical situations without any coherent legal principle to justify the different treatment. Both the transition plan and BIP were external documents containing supports essential to Student's FAPE, yet the ALJ required discussion of one while excusing discussion of the other. This contradiction demonstrates fundamental legal error that cannot be reconciled under any coherent interpretation of the IDEA.

B. Mischaracterization of MAC's Role and Essential Knowledge

32. **Administrative Finding**: The ALJ suggested MAC representatives were not necessary because Parent was present at the meeting and had adequate representation through counsel. (Decision, FOF 40-46).

33. **Disputed Fact**: MAC staff possessed unique, irreplaceable knowledge about Student's specific transition needs based on their intensive hands-on work with Student from May through July 2024. No DOE personnel had equivalent recent experience with Student's behavioral presentations, pairing requirements, or successful transition strategies. This knowledge was essential for developing an appropriate IEP, as demonstrated by Student's immediate regression when MAC supports were terminated and Student's inability to attend public school without them. The presence of Parent and counsel, while important for advocacy, could not substitute for MAC's specialized knowledge of Student's actual functioning and support needs.

C. Failure to Recognize the Essential Nature of Transition Supports

34. **Administrative Finding**: The ALJ characterized the May-July 2024 transition supports as optional accommodations that need not be discussed during IEP meetings. (Decision, p. 35).

35. **Disputed Fact**: The transition supports were not optional accommodations but essential components of Student's FAPE, as conclusively demonstrated

by: (1) Student's documented success during the May-July 2024 period when receiving these supports; (2) Student's immediate regression and cessation of school attendance when supports were terminated on July 9, 2024; and (3) DOE's own prior approval and funding of these supports, evidencing their recognition of their necessity. The causal relationship between support termination and educational regression establishes these were essential services, not optional accommodations.

D. Misapplication of Doug C. Standards

36. **Administrative Finding**: The ALJ applied harmless error analysis to parental participation violations and required proof of educational harm. (Decision, Exhibit A).

37. **Disputed Fact**: Under *Doug C. v. Hawaii Dept. of Education*, 720 F.3d 1038, 1045 (9th Cir. 2013), parental participation violations are categorically not subject to harmless error analysis and do not require proof of educational harm. The Ninth Circuit explicitly held that procedural violations that significantly impede parental participation constitute per se denials of FAPE. The ALJ's application of educational harm requirements directly contradicts this binding precedent and rewrites the statutory standard established by Congress in 20 U.S.C. § 1415(f)(3)(E)(ii)(II).

E. Improper Burden-Shifting Regarding IEP Team Composition

38. **Administrative Finding**: The ALJ placed the burden on Parent to request MAC participation, stating it would be unreasonable to "penalize DOE for not knowing that Parent wanted a representative from Private Center." (Decision, p. 24).

39. **Disputed Fact**: Under *Doug C.* and 20 U.S.C. § 1414(d)(1)(B)(vi), the obligation to ensure proper IEP team composition rests with the DOE, not the parent. The IDEA requires IEP teams to include "other individuals who have knowledge or special expertise regarding the child," and DOE had actual knowledge of MAC's extensive recent work with Student and their unique expertise regarding his transition needs. The ALJ's burden-shifting contradicts the statutory framework and established precedent placing this responsibility on educational agencies.

F. Inadequate Discussion of Behavioral Interventions

40. **Administrative Finding**: The ALJ found adequate discussion of behavioral interventions based on superficial references to an outdated BIP from April 2023. (Decision, FOF 48).

41. **Disputed Fact**: The video recording (DOE Ex. 80 at 1:01:20-1:02:53) demonstrates that the IEP team explicitly deferred meaningful discussion of behavioral interventions to processes "outside the IEP" and referenced a

behavior plan that was over 16 months old at the time of the meeting. When Parent specifically requested review of the outdated behavior plan, the team refused to engage in substantive discussion during the IEP meeting. This constitutes a failure to meaningfully consider Student's current behavioral needs and significantly impeded parental participation in decision-making regarding essential behavioral supports.

G. Timeline and Causation Evidence

42. **Administrative Finding**: The ALJ failed to adequately consider the temporal relationship between support termination and Student's regression.

43. **Disputed Fact**: The undisputed timeline in Exhibit B establishes a clear causal relationship: Student successfully attended public school with MAC supports (May 16-July 9, 2024), immediately stopped attending when supports were terminated (July 10, 2024), and remained unable to return to public school after DOE's refusal to discuss these supports at the August 22, 2024 IEP meeting. This temporal sequence conclusively demonstrates that the supports were essential to Student's access to FAPE and that their omission from IEP discussion constituted a substantive denial of educational opportunity.

H. Legal Standards for Video Evidence Review

44. **Administrative Finding**: The ALJ's interpretation of video evidence regarding the extent of behavioral intervention discussions.

45. **Disputed Fact**: Under 20 U.S.C. § 1415(i)(2)(C)(i), federal courts may independently review video recordings without deference to administrative interpretations. The video evidence (DOE Ex. 80) clearly shows the IEP team's explicit statements that behavioral interventions would be "handled outside the IEP process" and demonstrates Parent's requests for meaningful discussion that were deferred or refused. This objective evidence contradicts the ALJ's characterization of adequate discussion and supports independent federal court review of these procedural violations.

46. These disputed facts are material to the legal conclusions because they demonstrate that the administrative decision rests on fundamental legal errors, contradictory standards, and mischaracterizations of undisputed evidence. Under de novo review, these factual disputes support reversal of the administrative decision and entry of judgment for Plaintiff.

**CLAIMS FOR RELIEF**

**Count 1: Denial of FAPE Through Failure to Include Necessary IEP Team Members**

28. Plaintiff incorporates paragraphs 1 through 27 as if fully set forth herein.

29. The DOE's failure to invite MAC representatives to the August 22, 2024 IEP meeting violated 20 U.S.C. § 1414(d)(1)(B)(vi), which requires IEP teams to include "other individuals who have knowledge or special expertise regarding the child."

30. MAC staff possessed critical, unique knowledge about Student's transition needs, behavioral responses, and educational progress from their intensive work with Student from May through July 2024---knowledge that DOE staff did not possess and could not replicate. (Decision, FOF 24). No DOE personnel had equivalent recent, hands-on experience with Student's specific transition requirements and behavioral presentations in an educational setting.

31. This procedural violation significantly impeded Parent's opportunity to participate in the decision-making process regarding FAPE, as the IEP team lacked essential information about Student's needs and recent educational experiences.

32. Under 20 U.S.C. § 1415(f)(3)(E)(ii)(II) and Doug C. v. Hawaii Dept. of Education, 720 F.3d 1038, 1045 (9th Cir. 2013), this procedural violation alone constitutes a denial of FAPE without requiring any showing of educational harm.

33. The Hearings Officer erred in applying *Doug C.* by improperly shifting the burden to Parent to request MAC participation, when *Doug C.* places this obligation squarely on the DOE---not on the parent---to ensure appropriate IEP team composition.

34. The ALJ's error reflects a fundamental misunderstanding of Doug C., which establishes a legal standard for analyzing procedural violations, not a pleading requirement that parties must separately assert. Issue One of the administrative complaint explicitly incorporated Doug C.'s framework, yet the ALJ applied incorrect burden-shifting principles contrary to binding Ninth Circuit precedent.

**Count 2: Denial of FAPE Through Failure to Discuss Transition Supports**

35. Plaintiff incorporates paragraphs 1 through 33 as if fully set forth herein.

36. The transition supports at issue were not merely supplemental accommodations but rather essential components of Student's FAPE, as demonstrated by: (1) their inclusion in the operative transition plan approved by DOE; (2) their documented success during the May-July 2024 period; and (3) the immediate regression when terminated. (Decision, FOF 21-27; Exhibit B).

37. Whether characterized as "supports" or "services," these were not optional accommodations but rather essential components of Student's educational

program, as evidenced by their documented efficacy and Student's immediate regression upon their removal. (Exhibit B).

38. During the August 22, 2024 IEP meeting, the team failed to discuss the transition supports (MAC staff accompaniment, transportation pairing, behavioral facilitation) that Student had been receiving and that were necessary for his successful return to public school. (Decision, FOF 47; DOE Ex. 80 at 00:17:22-00:27:48).

39. Whether or not a formal transition plan was required under the IDEA, the IEP team was obligated to discuss the supports Student actually relied upon to access FAPE---supports the DOE itself had previously approved and funded during the May-July 2024 period. These supports had proven effective during Student's successful transition period. (Decision, FOF 21-24).

40. The team's decision to address transition supports "separately" was itself a denial of FAPE, as no such discussion occurred, leaving Student without necessary services. The DOE's failure to address these supports mirrored its July 2024 termination of MAC services, which caused immediate regression (Decision, FOF 25-27; Exhibit B), demonstrating that these supports were essential to Student's access to FAPE. The timeline in Exhibit B clearly shows the causal relationship: Student successfully transitioned with MAC

20

supports (May 16-July 9), regressed immediately when supports were terminated (July 10), yet DOE refused to discuss those supports at the IEP meeting---a per se FAPE denial under *Doug C.*

41. This procedural violation significantly impeded Parent's opportunity to participate in decision-making regarding these essential supports. Under 20 U.S.C. § 1415(f)(3)(E)(ii)(II) and *Doug C.*, procedural violations that interfere with parental participation constitute FAPE denials regardless of any showing of educational harm. The August 22, 2024 IEP meeting was the legally required forum to discuss these supports; post-hoc offers or deferrals do not cure the procedural violation.

**Count 3: Denial of FAPE Through Failure to Discuss Behavioral Interventions**

42. Plaintiff incorporates paragraphs 1 through 40 as if fully set forth herein.

43. During the August 22, 2024 IEP meeting, the DOE provided only superficial discussion of behavioral interventions, explicitly stating these would be "handled outside the IEP process" through reference to a behavior plan created in April 2023---over 16 months prior to the meeting. (Decision, FOF 48; DOE Ex. 80 at 1:01:20-1:02:53).

44. Parent specifically requested review of the outdated behavior plan during the meeting, but the team deferred this discussion to external processes outside the IEP framework. (DOE Ex. 80 at 00:04:45-00:13:10).

45. This failure to meaningfully discuss and consider necessary behavioral interventions during the IEP meeting significantly impeded Parent's opportunity to participate in decision-making regarding these critical aspects of Student's educational program. As documented in Exhibit C, the ALJ applied contradictory legal standards, finding that behavioral interventions in external documents required IEP meeting discussion while transition supports in external documents did not---a fundamental legal error that cannot be reconciled.

46. Under 20 U.S.C. § 1415(f)(3)(E)(ii)(II) and Doug C., this procedural violation alone constitutes a denial of FAPE without requiring proof of educational harm.

## Count 4: Violation of Section 504 of the Rehabilitation Act

47. Plaintiff incorporates paragraphs 1 through 45 as if fully set forth herein.

48. Student is a qualified individual with a disability under Section 504. (Decision, FOF 1-2).

49. Under 34 C.F.R. § 104.33, recipients of federal financial assistance must provide FAPE to students with disabilities. Section 104.34 requires that educational services be provided in the least restrictive environment, and Section 104.35 mandates evaluation and placement procedures that ensure appropriate services.

50. The DOE had actual knowledge of Student's need for transition supports, having approved and funded them during the successful May-July 2024 period. The DOE also had knowledge of Student's immediate regression when these supports were terminated on July 9, 2024. (Decision, FOF 21-27; Exhibit B).

51. DOE's refusal to address known, effective supports after witnessing their removal cause immediate harm constitutes the kind of deliberate indifference that violates Section 504's equal access guarantees. Despite the DOE's knowledge of Student's need for transition supports and Student's documented reliance on these services for educational access, the DOE's failure to invite MAC representatives or ensure meaningful discussion of these critical services---combined with its refusal to adequately address behavioral interventions---reflects deliberate indifference to Student's disability-related needs under *Mark H. v. Hamamoto*, 620 F.3d 1090, 1098-99 (9th Cir. 2010).

52. The procedural violations that significantly impeded parental participation constitute discriminatory treatment under Section 504, as they deprived Student of equal access to the educational planning process guaranteed to students with disabilities. See 34 C.F.R. § 104.33 (requiring FAPE under Section 504).

**CONCLUSION**

The Hearings Officer's decision rests on clear legal error and directly contradicts binding precedent under *Doug C. v. Hawaii Dept. of Education* and the plain language of the IDEA. The ALJ's application of irreconcilably contradictory legal standards to functionally identical issues, rewriting of statutory requirements to add educational harm elements that Congress deliberately omitted, and improper burden-shifting contrary to Ninth Circuit precedent cannot be reconciled with established law.

These procedural violations are not harmless---they undermine the very purpose of the IDEA by denying parents meaningful participation in the educational planning process that Congress designed to protect students with disabilities. As the Ninth Circuit emphasized in *Doug C.*, parental participation is "among the most important procedural safeguards" in the IDEA, and violations of this requirement alone constitute denials of FAPE. The administrative decision's legal errors warrant de novo reversal.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Assume jurisdiction over this action;

B. Reverse the administrative decision issued on May 2, 2025;

C. Find that the DOE denied Student a FAPE by:

1. Failing to include necessary participants in the IEP team in violation of 20 U.S.C. § 1414(d)(1)(B)(vi) and Doug C.;

2. Failing to discuss necessary transition supports during the IEP meeting;

3. Failing to discuss necessary behavioral interventions during the IEP meeting;

4. Significantly impeding Parent's opportunity to participate in decision-making regarding FAPE, which alone constitutes a denial under 20 U.S.C. § 1415(f)(3)(E)(ii)(II) and Doug C.;

D. Declare that the DOE violated Section 504 through deliberate indifference to Student's needs;

F. Issue a declaratory judgment that the DOE violated the IDEA and Section 504;

G. Order the DOE to reimburse Parent for private educational services at MAC from August 22, 2024, through the resolution of this action, pursuant to *Forest Grove School District v. T.A.*, 557 U.S. 230 (2009);

H. Award compensatory educational services to remedy the denial of FAPE consistent with *Parents of Student W. v. Puyallup Sch. Dist.*, 31 F.3d 1489 (9th Cir. 1994);

I. Issue prospective injunctive relief mandating that DOE: (1) invite MAC representatives to future IEP meetings for Student; (2) meaningfully discuss all necessary supports during IEP meetings rather than deferring to external plans; and

(3) ensure proper IEP team composition consistent with 20 U.S.C. §

1414(d)(1)(B)(vi);

J. Award reasonable attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B)

and 29 U.S.C. § 794a(b), as mandatory for prevailing parties under *Hardeman v.*

*Honolulu*, 77 F.4th 1083 (9th Cir. 2023);

K. Grant such other and further relief as the Court deems just and proper.

DATED: Irvine, CA. June 1, 2025.

_s/ Keith H.S. Peck_____

KEITH H.S. PECK
Attorney for Plaintiffs